# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **B.M. and B.L.**

**No. 20-0430** (Randolph County 19-JA-168 and 19-JA-169)

**FILED**
**February 2, 2021**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother W.S., by counsel Gregory R. Tingler, appeals the Circuit Court of Randolph County's March 31, 2020, order terminating her parental rights to B.M. and B.L.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Timothy H. Prentice, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights rather than employing a less-restrictive dispositional alternative and in denying her motion for post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In November of 2019, the DHHR filed an abuse and neglect petition against petitioner and her husband, who has no relation to the children, alleging drug use, domestic violence, and an unkempt home. According to a referral, the DHHR alleged that on one occasion, while the children were playing outside unsupervised, they told a neighbor that petitioner was unconscious. When emergency services responded, petitioner was awake and alert. The emergency personnel concluded that petitioner's low blood sugar, not drug use of any kind, caused her to pass out. The DHHR also alleged that petitioner suffered from vasovagal syncope which caused her to pass out when stressed, and that her husband had picked her up and thrown her during an argument. The DHHR alleged that drug paraphernalia was found in the home, which petitioner contended belonged to the husband. The DHHR further alleged that caseworkers tried to make contact with

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

petitioner on several occasions thereafter but were unsuccessful. Finally, the DHHR alleged that petitioner's husband was being evicted from petitioner's home and that the children were living with B.L.'s father, R.L., and R.L.'s mother/B.L.'s grandmother as a result of ongoing family court proceedings.

The DHHR also interviewed the children, who said petitioner's home was messy and disorganized and that was the reason they no longer lived with her and, instead, were living with B.L.'s grandmother. The DHHR alleged that petitioner tested positive for methamphetamine after a family court hearing in May of 2019 and in June and July of 2019. A caseworker testified at a family court hearing that petitioner did not demonstrate impulse control and was putting drug use above the needs of the children. The DHHR also alleged that petitioner was arrested in October of 2019 and was in possession of a large amount of methamphetamine and other drug paraphernalia. She was thereafter released on bond, required to check-in for drug screens, and tested positive for methamphetamine and alcohol on some screens, while testing negative on others. The DHHR also alleged that R.L. abused methamphetamine. However, the DHHR reported that R.L. sought drug treatment, continued to test negative for drugs after treatment, and lived with his mother/B.L.'s grandmother who also cared for the children. As a result, the DHHR did not seek custody of the children. By contrast, the DHHR alleged that the father of B.M. had no contact with the child since she was two years old, provided no financial support for the child, and that the child lived with and referred to R.L. as her father. The circuit court held a preliminary hearing wherein petitioner and the father of B.M. failed to appear. The circuit court found that the children were in imminent danger and ratified removal of the children from their custody.

The circuit court held an adjudicatory hearing in January of 2020 wherein petitioner stipulated to abusing and neglecting the children. The circuit court also ordered petitioner to participate in random drug screenings and authorized visitation pending negative screens.

In March of 2020, the circuit court held a dispositional hearing wherein petitioner did not appear as a result of her incarceration from a bond violation. Petitioner, through her counsel, orally requested an improvement period.[2] The DHHR opposed petitioner's motion for an improvement period but did not oppose continuing the hearing to allow her additional time to participate in the proceedings. Later that month, the circuit court held the continued dispositional hearing. At the hearing, the DHHR put on evidence that petitioner was abusing drugs, and had positive screens for methamphetamine, alcohol, and benzodiazepine. The DHHR acknowledged that four screens were too diluted to be conclusive and at least two urine tests were negative for all substances. However, the DHHR put on additional evidence that petitioner's blood screens were positive for controlled substances and that petitioner made efforts to intentionally dilute her screens. Petitioner acknowledged her positive screens and drug use and asked the circuit court to transfer guardianship of B.M. and B.L. to B.L.'s father as a less-restrictive alternative to terminating her parental rights. Petitioner also moved for post-termination visitation, in the event the court terminated her parental rights.

---

[2]Petitioner acknowledges that she did not file a written motion for an improvement period as required by West Virginia Code § 49-4-610(2)(A). As such, she is not challenging the circuit court's refusal to grant her an improvement period on appeal.

After hearing the evidence, the circuit court denied petitioner's motion for an improvement period and terminated her parental rights upon finding that there was no reasonable likelihood that she could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. The circuit court also denied petitioner's motion for post-termination visitation, finding it likely to be disruptive to the children. It is from the March 31, 2020, dispositional order that petitioner appeals.[3]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights rather than granting her request for transfer of guardianship as a less-restrictive alternative. Petitioner argued that the children were of an age and maturity to express their wishes and that a transfer of guardianship would not have been harmful or against their best interests. According to petitioner, the circuit court was required to give precedence to the dispositions listed in West Virginia Code § 49-4-604(c) and that it should have granted her motion to transfer guardianship pursuant to West Virginia Code § 49-4-604(c)(5).[4] We disagree and find no error in the circuit court's termination of petitioner's parental rights.

---

[3]The father of B.L. successfully completed his improvement period and the abuse and neglect petition against him was dismissed. The permanency plan for B.L. is to remain in the custody of her father. The father of B.M. had his parental rights terminated below. The permanency plan for B.M. is adoption by the father of B.L., who has raised her for several years.

[4]West Virginia Code § 49-4-604(c)(5) provides that a circuit court may

[u]pon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the care, custody, and control of the department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court.

West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(d)(1) provides that a situation in which there is "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" includes when the abusing parent has "habitually abused or [is] addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and the person or persons have not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning."

Here, the evidence demonstrates that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future. As shown above, petitioner's pervasive drug use continued throughout the entirety of the proceedings. Indeed, the record establishes that petitioner tested positive for methamphetamine, alcohol, and benzodiazepine on multiple occasions, while diluting her screens on other occasions. Further, although it may be true that petitioner has previously acknowledged struggling with substance abuse, she has at other times flatly denied or minimized such abuse. Petitioner was also arrested on drug-related charges during the proceedings, and her bond was revoked due to her continued drug use. Finally, petitioner claims that she was unable to participate in any services because the circuit court denied her request for an improvement period. However, petitioner failed to take advantage of the opportunities she was given during the periods she was not incarcerated and demonstrated an inadequate capacity to solve the problems of abuse with help or on her own.

Petitioner also alleges that the circuit court erred in terminating her rights because it failed to consider the wishes of the children. Petitioner cites to West Virginia Code § 49-4-604(c)(6)(C), which requires that "the court shall give consideration to the wishes of a child 14 years of age or older or otherwise of an age of discretion as determined by the court regarding the permanent termination of parental rights." The record shows, however, that the children were only eight and six years old, respectively, at the time of the dispositional hearing, and petitioner fails to cite to any portion of the record demonstrating that the children were of an age of discretion such that the circuit court should have considered their wishes. Accordingly, we find no error in the circuit court's termination of petitioner's parental rights given her failure to remedy the conditions of abuse and neglect and the children's tender ages.

While petitioner claims the circuit court should have imposed a less-restrictive alternative to the termination of her parental rights, such as the transfer of guardianship, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

4

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the circuit court's termination of petitioner's parental rights.

Finally, petitioner argues that the circuit court erred in denying her motion for post-termination visitation because both children have been placed in the same home with B.L.'s father. Further, petitioner argues that the children were in her custody until their removal, and that she established a bond as she is "the only parent truly known by the children." Petitioner contends that post-termination visitation would have "no adverse consequences" since both children are in "the home of a person having an amicable relationship" with her. We find petitioner's arguments unavailing.

In regard to post-termination visitation, we have previously held that

"[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). Here, the circuit court found it was not in the children's best interests to grant visitation. The DHHR and guardian argued that contact with the young children would be disruptive. Further, petitioner was still abusing drugs and there is no evidence in the record that petitioner ever visited the children during the proceedings or asked to visit with them. Accordingly, we find no error in the circuit court's denial of petitioner's motion for post-termination visitation with the children.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 31, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  February 2, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton